IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT SCHULTZ, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) 04 C 5512 |
| v. | )<br>) Judge Ronald A. Guzmán |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Plaintiff Robert Schultz ("Schultz") has sued American Family Mutual Insurance Company ("American Family"), for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law, 820 ILL. COMP. STAT. 105/1, *et seq.* and several other similar state statutes. Before the Court are: (1) plaintiff's motion to send opt-in notice to similarly situated employees; (2) American Family's objections to Magistrate Judge Nolan's order granting plaintiff's motion to compel; and (3) American Family's motion to dismiss the state-law class claims for lack of subject matter jurisdiction. For the reasons set forth below, the Court grants the motion to send notice, overrules American Family's objections to the Magistrate Judge's order and grants in part and denies in part American Family's motion to dismiss.

### Background

Robert Schultz worked as a claims adjuster for American Family from January 1990 to June 2003. (Def.'s Additional Ex. Supp. Br. Opp'n Notice, Schultz Dep., Ex. 1, Resume.) He asserts a claim for unpaid overtime under FLSA and various state laws, alleging that American

Family wrongly classified him and other claims adjusters as exempt employees. On January 3, 2005, Schultz filed a motion to send opt-in notice to similarly situated American Family employees. Schultz defines the potential class for this collective action as present and former American Family employees who worked as physical damage examiners, claims analysts or adjusters anywhere in the United States at any time between August 20, 2001 and the date of the notice. (Pl.'s Mem. Approve Notice, Ex. 1, Proposed Notice at 1.) American Family contends that notice should not be sent because Schultz has not shown that he is situated similarly to the potential class members and the class as he defines it is too broad.

## Discussion

In relevant part FLSA provides:

> [a]n action . . . may be maintained against any employer [who violates the statute] . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Under FLSA, potential plaintiffs are required to "opt in" to a collective action. *Flores v. Lifeway Foods, Inc.* 289 F. Supp. 2d 1042, 1044 (N.D. Ill. 2003). The Court has discretion to authorize notice to similarly situated potential plaintiffs and to order defendant to disclose the names and addresses of potential plaintiffs. *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 173 (1989).

The threshold issue in deciding whether to authorize notice in an FLSA action is whether the plaintiff has demonstrated that he and other potential class members are similarly situated. *See Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (noting that district court should determine whether there are other similarly situated employees before granting motion to

send notice). The statute does not dictate the quality or quantity of evidence required to make that showing nor, as far as we can tell, does any federal appellate case law.

Many district courts, however, take a two-tiered approach to the similarly situated determination. An initial determination is made at the notice stage, when plaintiff need only make "a minimal showing that others in the potential class are similarly situated." *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). The second stage, "which typically occurs after the parties have engaged in discovery and the defendant has moved to deny certification," involves a more searching inquiry. *Id.* (noting that courts consider "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns" at stage two). At the notice stage, the Court looks beyond the complaint to the evidence submitted by the parties to determine whether plaintiff's limited factual burden has been satisfied. *Champneys v. Ferguson Enter., Inc.*, No. IP 02-535-CH/K, 2003 WL 1562219, at *5 (S.D. Ind. May 11, 2003).

The record shows that American Family has four kinds of adjusters: casualty adjusters, physical damage adjusters, property adjusters and commercial-farm/ranch adjusters. (Def.'s Br. Opp'n Notice, Ex. 1, Canney Aff. ¶ 4.) Within each category, there are four job titles that American Family classifies as exempt: claim representative, claim analyst, claim examiner and claim specialist. (*Id.* ¶ 5.) American Family's adjusters work out of or are assigned to one of its thirty-two claims offices, which are located in Illinois and sixteen other states. (*Id.* ¶ 3.)

From January 2000 through June 2003, Schultz was a physical damage ("PD") claim examiner assigned to American Family's Lombard, Illinois office. (Pl.'s Mem. Approve Notice, Ex. 2, Schultz Decl. ¶ 2.) Schultz's proposed notice is not, however, limited to PD examiners or to

3

adjusters in the Lombard office. Rather, he seeks to send notice to all four exempt categories of PD adjusters employed by American Family anywhere in the United States. (*Id.*, Ex. 1, Proposed Notice.)

American Family says PD specialists should not be included in the class because they, unlike representatives, analysts and examiners, have managerial duties. (Def.'s Br. Opp'n Notice, Ex. 1, Canney Aff. ¶ 10.) Schultz has offered no evidence to contradict that assertion. On the contrary, Schultz testified that he was supervised by a claim specialist. (*See* Def.'s Additional Ex. Supp. Br. Opp'n Notice, Schultz Dep. at 62-63.) Given the undisputed evidence that PD specialists supervise PD examiners, those two categories of adjusters are not similarly situated. *Cf. Sarsha v. Sears Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir. 1993) (supervisor and subordinate not similarly situated for Title VII purposes).

American Family does not, however, make any real effort to distinguish PD representatives and analysts from PD examiners. In fact, the only difference between those categories of adjusters that American Family identifies is the level of settlement authority and complexity of claims assigned to each. (*See* Def.'s Br. Opp'n Notice, Ex. 1, Canney Aff. ¶¶ 28-29 (stating that settlement authority and complexity of cases increase as an adjuster progresses from representative to analyst to examiner).)

Nonetheless, American Family says there are differences in adjuster jobs that are dictated by job location. PD adjusters assigned to drive-in facilities report to a single location and work only the hours that the facility is open. (*Id.* ¶ 11.) PD adjusters assigned to salvage yards report to a single location and evaluate only total loss claims. (*Id.*) PD adjusters assigned to the customer repair program evaluate repair facilities for approval into the program, monitor the performance of participating shops and resolve disputes that arise between those shops and American Family's

4

customers. (*Id.* ¶ 12.) PD adjusters assigned as inside adjusters perform their work from a claims office and may settle claims without examining the vehicles. (*Id.* ¶ 11.) And PD adjusters assigned to the field, as Schultz was, operate out of their homes, set their own hours and generally communicate with their supervisors electronically. (*Id.* ¶ 13.)

Schultz offers no evidence to suggest that PD adjusters assigned to a single location, be it a salvage yard, a drive-in facility or a claims office, or those assigned to the customer repair program have substantially the same duties as field adjusters. Thus, he has not established, even under the lenient notice standard, that those adjusters are situated similarly to field adjusters.

That leaves a potential class comprised solely of field adjusters. American Family says such a class would be improper because the field adjuster job varies by region. In American Family's words, "the experience of a field adjuster in a rural western area such as Idaho will be quite different than the experience of an adjuster working in a dense urban area such as Chicago." (*Id.* ¶ 14.) The question is not whether the adjusters' experiences are different, however, but whether their job duties and compensation scheme are different.

Schultz has made a sufficient showing that they are not. Schultz has personal knowledge of the practices in the two American Family claims offices to which he was assigned. (*See* Pl.'s Mot. Send Notice, Ex. 2, Schultz Decl. ¶ 3 (stating that, based upon Schultz's observations and experience, "the duties and responsibilities of other claims adjusters . . . were substantially the same" as his); Def.'s Additional Ex. Supp. Br. Opp'n Notice, Schultz Dep. at 46 (stating that he worked out of the Schaumburg office for two years and then moved to the Burr Ridge-Lombard office).)[1] In addition, he has submitted information from the American Family website and

---

[1] Schultz argues that his declaration is evidence that the field adjusters in each of American Family's thirty-two offices performed the same work. But his declaration does not say anything about the extent to which he interacted with PD adjusters who were attached to other claims offices or otherwise lay a foundation for his purported knowledge of the work they perform.

5

excerpts from PD training materials, memoranda and bulletins that suggest the duties of all American Family field adjusters are the same. The American Family website, for example, provides descriptions of available adjuster jobs without any indication that the duties vary by location. (*See* Pl.'s Mem. Approve Notice, Ex. 3 at 4-5.) Similarly, the training materials refer to a variety of policies and initiatives for PD adjusters that apply company-wide. The excerpt from the Collision Severity Manual discusses "corporate initiatives to control claims severity" and, under the heading of "expectations," says "[c]onsistency in writing estimate and supplements, all offices, i.e., enforcement of Company Claim Bulleting 701" and "[u]niform use of PDC.log." (*Id.*, Ex. 4 at AF008250, AF008270.) A PD claim bulletin dated February 2002 says that all offices must adhere to company computer guidelines for vehicle estimates. (*Id.* at AF008297.) Another document says that company guidelines "provide uniform expectations for all Claim Personnel." (*Id.* at AF009033.) Moreover, American Family has submitted a PD student manual dated January 2000, a 450 page document that discusses in detail the responsibilities and expectations of PD adjusters, that it "adopted for corporate-wide use." (*See* Def.'s Br. Opp'n Notice, Ex. 1, Canney Aff. ¶ 45 & Ex. G.) Taken together, these materials make a sufficient preliminary showing that all American Family field adjusters have substantially the same job duties.

Even if that is true, American Family says the record establishes that Schultz is not a typical field adjuster because he testified that: (1) he did not perform various functions listed in American Family's description of the PD claim examiner job; and (2) he called a supervisor whenever an insured wanted to settle a claim for an amount other than the cash value determined by the estimating software. As an initial matter, some of the claim examiner duties that Schultz said he did not perform are not mandatory. (*See* Def.'s Additional Ex. Supp. Br. Opp'n Notice, Schultz Dep., Ex. 22, Job Description at 1 (stating that PD claim examiner "[t]akes recorded

6

statements when necessary or when directed" and "[m]ay assist casualty units in completing scene investigations.") Moreover, absent evidence that other PD adjusters actually perform the tasks listed in the job description, which American Family has not provided, Schultz's failure to mirror the job description perfectly does not make him an atypical adjuster.

Nor does Schultz's testimony that he contacted a supervisor when an insured wanted a settlement in excess of cash value. Citing to the affidavit of Frank Granato, Schultz's supervisor, American Family says that Schultz's asserted practice was not the norm. In reality, however, there is no conflict between Schultz and Granato's testimony. Schultz said: "If I couldn't settle based on . . . the figure that the company wanted me to settle with based on their total loss form" he would "call in and get an opinion . . . from [his] supervisor or specialist." (Def.'s Additional Ex. Supp. Br. Opp'n Notice, Schultz Dep. at 62-63.) Then, the following exchange occurred:

> Q: Okay. Who was the specialist you called to make those decisions for you?
> A: Frank Granato.
> Q: So you're suggesting that Mr. Granato always made those decisions?
> A: Only if I had a problem.

(*Id.* at 63.) In other words, Schultz did not say he took every dispute with a client to Granato, only those disputes that he was unable to resolve on his own.

Granato testified similarly. He said that adjusters did not seek his approval every time they had a dispute with a customer, but "[o]n occasion, an adjuster would call if [he] was having difficulty with a customer and the parties were at a stalemate." (Def.'s Br. Opp'n Notice, Ex. M, Granato Aff. ¶ 24.) Thus, there is no tension between Schultz and Granato's descriptions of adjuster practice.

In short, the Court finds that there is enough evidence, at this stage of the proceedings, to conclude preliminarily that all American Family PD field adjusters perform substantially the same work.

7

The evidence also supports the inference that American Family compensates all of its PD field adjusters in the same way. Schultz's personal knowledge of the practices of the offices in which he worked is bolstered by American Family's admissions that it pays a salary to "most, if not all" of its adjusters, Answer ¶ 20, and that it classifies the representative, analyst and examiner positions as exempt, Def.'s Br. Opp'n Notice, Ex. 1, Canney Aff. ¶ 5.

For the reasons stated above, the Court finds that there is sufficient evidence that Schultz and all other American Family PD field adjusters are similarly situated. *See Bosley v. Chubb Co.*, No. Civ. A. 04CV4598, 2005 WL 1334565, at *4 (E.D. Pa. June 3, 2005) (evidence that employer had a standard training program for admission representatives, a single job description for admission representative position and an internet job posting that did not distinguish between admissions representative positions at various locations held sufficient showing of similarity for notice). Schultz's motion to send opt-in notice to all American Family PD field adjusters is granted.

### **Tolling**

Schultz also asks the Court to toll the limitations period for all potential collective action members beginning on August 20, 2004, when this action was filed. The FLSA statute of limitations is two years after the cause of action accrued or three years for a cause of action arising out of a willful violation. 29 U.S.C. § 255(a). An FLSA claim accrues "at each regular payday immediately following the work period during which the services, for which compensation is sought, were rendered." *Demos v. City of Indianapolis*, 126 F. Supp. 2d 548, 551 n.1 (S.D. Ind. 2000), *reconsidered in part on other grounds*, 139 F. Supp. 2d 1026 (S.D. Ind. 2001), *aff'd*, 302 F.3d 698 (7th Cir. 2002).

8

Equitable tolling is appropriate "if despite all due diligence [a plaintiff] is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Schultz says the limitations period should be tolled for the potential class members because, until he learns their identities, he cannot advise them of their right to opt in to this suit. Ignorance of a lawsuit, however, is not the same as ignorance of a claim. Because Schultz does not contend that the prospective plaintiffs were unable to discover American Family's alleged FLSA violations, there is no basis for tolling.

## Objections to Magistrate Judge's Order

On May 31, 2005, Magistrate Judge Nolan granted plaintiff's motion to compel and ordered American Family to produce, among other things, the identities of "putative class members identified as [PD] analysts, examiners and claims representatives employed by defendant in the three year period preceding the filing of this lawsuit." (*See* 5/31/05 Min. Order; 5/31/05 Hr'g Tr. at 8 (stating that order is limited to PD adjusters).) American Family contends that the Magistrate Judge's order is premature because it preceded this Court's finding that the three categories of adjusters are similarly situated.

The Court's ruling that PD representatives, analysts and examiners are similarly situated for notice purposes moots American Family's objection. American Family is, therefore, ordered to comply with Magistrate Judge Nolan's Order within fourteen days of the date of this Memorandum Opinion and Order.

## Motion to Dismiss State Law Claims

American Family contends that the Court lacks supplemental jurisdiction over plaintiff's class claims for relief under state wage and hour laws. The Court's supplemental jurisdiction derives from 28 U.S.C. § 1367, which states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). That statute, American Family argues, only vests the Court with supplemental jurisdiction over the state-law wage claims of plaintiff and any putative class member that opts into the FLSA class.

In support of its argument, American Family relies primarily on *Bartelson v. Winnebago Industries, Inc.*, 219 F.R.D. 629 (N.D. Iowa 2003). In the *Bartelson* court's view, "the claims of the individual members of a permissive class are distinct cases and controversies; each must separately support federal jurisdiction." *Id.* at 636 (quotation omitted). Thus, the court held "where federal jurisdiction is premised on a federal class claim, supplemental jurisdiction over a companion state-law class claim extends only to those members of the state-law class who *also* have the federal class claim." *Id.* (emphasis in original); *see McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) (not addressing jurisdictional issue but denying motion for certification of state-law class because "[s]ection 1367(a) allows parties to join their state claims to federal claims where appropriate, [but] it does not contemplate a plaintiff using supplemental jurisdiction as a rake to drag as many members as possible into what would otherwise be a federal collective action.").

The Court respectfully disagrees with the *Bartelson* court. The plain language of section 1367 extends supplemental jurisdiction to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. §1367(a); *see Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1181-82 (7th Cir. 1993) ("If a [state] claim is close enough to the . . . claim that confers federal jurisdiction to be part of the same case, there is no constitutional bar to the assumption of federal jurisdiction over the claim, because Article III confers federal jurisdiction over cases or controversies rather than over claims . . . ."). State and federal claims are part of the same case or controversy if they "derive from a common nucleus of operative fact." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999) (quotation omitted). Schultz's FLSA claim and the putative class members' state-law wage claims derive from a common nucleus of operative fact: American Family's allegedly improper classification of them as exempt employees. Thus, the plain language of section 1367 confers supplemental jurisdiction over the state-law class claims. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 93 (S.D.N.Y. 2001) (holding that FLSA claim conferred supplemental jurisdiction over class claim based on state law because both "arise from the same nucleus of operative facts, are substantially related to each other, and naturally would be treated as one case and controversy").

Whether the exercise of jurisdiction over the state class claims is appropriate is a different question. Under section 1367, the Court can decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

11

28 U.S.C. § 1367(c). Whether any of these exceptions counsel restraint in this case will not be clear until the FLSA class has been determined and plaintiff moves to certify the state-law class. If and when those events occur, American Family may again ask the Court to decline to exercise supplemental jurisdiction over the state-law claims.

Even if the Court has supplemental jurisdiction over the state-law claims, American Family says that Schultz lacks standing to pursue any claims grounded in the laws of states other than Illinois. Schultz "concedes that he personally has no claim for relief" under the laws of any other state, but he argues that standing for class claims based on the laws of other states need not be examined until he moves to certify the class. (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss State Law Class Claims at 11.)

The Court disagrees. Standing to sue, even in class actions, is determined at the time the suit is filed. *See Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998) ("Certification of a class action comes after the suit is filed, so if the named plaintiffs lacked standing when they filed the suit . . . there was no case when class certification was sought."). If Schultz, who is the only named plaintiff, currently lacks standing to sue for American Family's alleged violations of other states' statutes – and he says that he does – class certification will not cure that defect. *Portis v. City of Chi.*, 347 F. Supp. 2d 573, 576 (N.D. Ill. 2004) ("[P]laintiffs cannot now acquire standing to seek injunctive relief through subsequent class certification if they did not have such standing upon filing suit. . . . . [S]ubsequent certification of a class that *does* include members with live claims cannot confer standing to seek injunctive relief on the named representative(s) who lacked standing at the outset of the litigation.") (emphasis in original). Consequently, American Family's motion to dismiss any class claims based on the violation of the wage laws of states other than Illinois is granted. In all other respects, the motion is denied.

## Conclusion

For the foregoing reasons, the Court grants Schultz's motion to send notice, overrules American Family's objections to Magistrate Judge Nolan's May 31, 2005 order and grants in part American Family's motion to dismiss the state-law class claims for lack of jurisdiction [doc. no. 44]. Plaintiff's motion to extend time for notice discovery and to file a reply in support of its motion to approve notice [doc. no. 28] is stricken as moot. American Family's motion for summary judgment [doc. no. 23] and motion to file an oversize brief in support [doc. no. 24] are stricken without prejudice as premature. The parties are ordered to submit an agreed proposed notice within seven days of the date of this Memorandum Opinion and Order and to appear at a status hearing on November 16 at 9:30 a.m. to discuss the notice and the distribution process.

**SO ORDERED.**                    **ENTERED:**

11/1/05

HON. RONALD A. GUZMAN
United States District Judge